UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIEL JOSE ABREU BRAVO (A 234-272-705),<br>Petitioner,<br>v.<br>WARDEN, CENTRAL VALLEY ANNEX DETENTION<br>Respondent. | No. 1:26-CV-07155-DAD-CKD<br><br>FINDINGS & RECOMMENDATIONS |

Petitioner is a federal immigration detainee who filed this habeas corpus action pursuant to 28 U.S.C. § 2241. This matter was referred to the undersigned by operation of Local Rule 302 and 28 U.S.C. § 636(b)(1).

## I. Factual and Procedural History

Petitioner, a citizen of Venezuela, entered the United States on June 12, 2024 pursuant to a program which granted Venezuelan nationals advanced authorization to travel to the United States for the purpose of seeking a discretionary grant of parole at a lawful port of entry. ECF No. 7-1 at 2; see also U.S. Department of Homeland Security ("DHS") Implementation of a Parole Process for Venezuelans ("Parole Implementation"), 87 Fed. Reg. 63507 (Oct. 19, 2022). Beneficiaries of the Venezuelan parole program had to pass a national security and public safety vetting and have a sponsor in the U.S. willing to provide housing and support. Parole

Implementation, 87 Fed. Reg. at 63515. Upon arrival in the U.S., beneficiaries of the parole program, like Petitioner, were "inspected by CBP [Customs and Border Protection] and considered for a grant of discretionary parole for a period of up to two years on a case-by-case basis." Id. at 63516. The Immigration and Nationality Act ("INA") provides DHS the authority to grant parole for "urgent humanitarian reasons or significant public benefit." I.N.A. § 212(d)(5)(A); 8 U.S.C. §1182(d)(5)(A).

Petitioner submitted an application for asylum with U.S. Citizenship & Immigration Services ("USCIS") in April 2025, within one year of entry into the U.S. ECF No. 7-1 at 2; 8 at 3. USCIS issued Petitioner an Employment Authorization Document ("EAD", "work permit") on January 15, 2026, and the State of Florida issued him a driver's license in June 2026. ECF No. 8 at 3, 12-13.

On July 7, 2026, the Hialeah, Florida Police Department arrested Petitioner on charges of aggravated assault with a deadly weapon (Florida Statute § 784.021.1(a)), false imprisonment (Fla. Stat. § 787.02.2), child abuse (Fla Stat. § 827.03.2(c)), and domestic battery (Fla. Stat. § 784.03.1(a)(1)). ECF No. 7-3 at 5-6; 8 at 8; 9 at 4-5. The State Attorney did not take further action on the charges; Petitioner has not been nor will be convicted. ECF No. 8 at 8, 10; 9 at 4-5.

The day after the criminal arrest, U.S. Immigration and Customs Enforcement ("ICE") placed an immigration detainer on Petitioner and initiated removal proceedings against him. ECF No. 7-1 at 2; 7-2. ICE took Petitioner into custody on August 6, 2026, after the State Attorney declined to pursue criminal charges. ECF No. 7-1 at 1; 8 at 8. Petitioner is currently detained at Central Valley Annex and has not been given a custody redetermination hearing. ECF No. 1 at 1; 8 at 2, 4. Removal proceedings remain pending. ECF No. 8 at 4-5.

Petitioner filed a petition for writ of habeas corpus on September 8, 2026, initially making arguments regarding detention after a final order of removal (which he does not have). ECF No. 1. He later submitted documents relating to the outcome of his criminal arrest and claimed that detention without a custody hearing violates due process. ECF No. 8; 9. Respondent maintains that 8 U.S.C. § 1225(b)(2)(A) governs Petitioner's detention but acknowledges Rodriguez Vazquez v. Bostock, 183 F.4th 1160 (9th Cir. 2026) and concedes that Petitioner is entitled to a

custody redetermination hearing per 8 U.S.C. §1226(a). ECF No. 7. Nevertheless, "no one has ever let" Petitioner request a bond hearing. ECF No. 8 at 3.

## II. Applicable Detention Statute

The relevant detention statutes at issue here are 8 U.S.C. §§ 1225(b)(2) and 1226(a). "Where a [noncitizen] falls within this statutory scheme can affect whether his detention is mandatory or discretionary, as well as the kind of review process available to him if he wishes to contest the necessity of his detention." Prieto-Romero v. Clark, 534 F.3d 1053, 1057 (9th Cir. 2008).

Under 8 U.S.C. § 1225, a noncitizen who arrives in the United States or is present in the U.S. but has not been admitted is treated as an applicant for admission. Jennings v. Rodriguez, 583 U.S. 281, 286 (2018). Noncitizens determined to be inadmissible under certain specific grounds are covered by § 1225(b)(1) and subject to expedited removal unless they demonstrate a credible fear of persecution, after which they are detained pending adjudication of their application for asylum. 8 U.S.C. § 1225(b)(1). All other applicants for admission not covered by § 1225(b)(1) fall under § 1225(b)(2). Those subject to § 1225(b)(2) "shall be detained" while placed in removal proceedings. 8 U.S.C. § 1225(b)(2)(A).

Noncitizens who are already present in the U.S. but are subject to removal proceedings may be detained pursuant to 8 U.S.C. § 1226(a). Unlike those detained under § 1225(b)(2), where detention is mandatory, those detained under § 1226(a) may be released on bond or conditional parole. 8 U.S.C. § 1226(a)(2). When a noncitizen is arrested and taken into immigration custody pursuant to § 1226(a), ICE makes an initial custody determination, including the setting of bond. See 8 C.F.R. § 236.1(c)(8). After this initial custody determination, the noncitizen may request a bond redetermination by an immigration judge. 8 C.F.R. § 236.1(d)(1).

Respondent's position that Petitioner is subject to detention pursuant to 8 U.S.C. § 1225(b)(2)(A) is contrary to recent Ninth Circuit precedent. Noncitizens "present without admission who are apprehended in the interior of the United States are subject to the detention regime of § 1226, not § 1225(b)(2)(A)." Rodriguez Vazquez v. Bostock, 183 F.4th 1160, 1165

(9th Cir., 2026). Because ICE detained Petitioner after he had been present[1] in the U.S. for over two years, § 1226 governs his current detention. Respondent has not alleged – and nothing in the record would indicate – that Petitioner is subject to mandatory detention pursuant to § 1226(c), therefore the proper detention authority is §1226(a).

**III. Due Process Analysis**

The Supreme Court has held that "the Due Process Clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas v. Davis, 533 U.S. 678, 693 (2001). Similarly, Ninth Circuit precedent holds that the Due Process Clause applies to noncitizens regardless of whether they are "seeking admission" or are "admitted" under immigration law. Wong v. United States, 373 F.3d 952, 973 (9th Cir. 2004), abrogated on other grounds by Wilkie v. Robbins, 551 U.S. 537 (2007). The Due Process Clause "protects individuals against two types of government action: violations of substantive due process and procedural due process." United States v. Quintero, 995 F.3d 1044, 1051 (9th Cir. 2021) (internal quotation omitted).

Courts examine procedural due process claims in two steps. The first step is determining whether there exists a protected liberty interest under the Due Process Clause. The second step examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution. See Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 460 (1989); Morrissey v. Brewer, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due.").

**A. Liberty Interest**

In reviewing Petitioner's due process challenge, the undersigned turns first to the question of whether Petitioner has a protected liberty interest in freedom from detention. This court has joined several district courts within the Ninth Circuit in finding that non-citizens paroled into the United States pursuant to 8 U.S.C. § 1182(d)(5) have a liberty interest in their continued release,

---

[1] Though Petitioner entered lawfully pursuant to a grant of parole, his lawful entry is not considered an admission. See 8 U.S.C. §1182(d)(5)(A) ("…but such parole of such [noncitizen] shall not be regarded as an admission…")

entitling them to due process protections. See e.g. Chavarria v. Chestnut, No. 1:25-cv-01755-DAD-AC, 2025 WL 3533606, at *3–5 (E.D. Cal. Dec. 9, 2025) ("Petitioner's release pursuant to § 1182(d)(5) necessarily required a determination that he posed neither 'a security risk nor a risk of absconding.' 8 C.F.R. § 212.5(b). Once released, a parolee acquires an interest in his or her continued liberty"); Omer G. G. v. Kaiser, 815 F. Supp. 1098 (E.D. Cal. 2025) (determining that the petitioner was entitled to a post-deprivation bond hearing after he was initially released pursuant to § 1182(d)(5)(A) and later re-detained); Salazar v. Casey, No. 25-cv-02784-JLS-VET, 2025 WL 3063629, at *4, 6 (S.D. Cal. Nov. 3, 2025) (ordering the petitioner released from custody subject to the conditions of her preexisting parole under § 1182(d)(5)(A), and requiring notice and a hearing prior to her re-detention); Noori v. LaRose, No. 25-cv-1824-GPC-MSB, 2025 WL 2800149, at *9–10, 14 (S.D. Cal. Oct. 1, 2025) (enjoining re-detention of the petitioner during the pendency of his removal proceedings without leave of the court, when the petitioner was previously released on humanitarian parole pursuant to § 1182(d)(5)(A)); Rodriguez Cabrera v. Mattos, No. 2:25-cv-01551-RFB-EJY, 2025 WL 3072687, at *9–11, 14 (D. Nev. Nov. 3, 2025) (ordering the petitioner's immediate release following re-detention when he was initially released pursuant to § 1182(d)(5)(A)).

Like the petitioners in the above-referenced cases, Petitioner was granted a form of humanitarian parole pursuant to 8 U.S.C. § 1182(d)(5)(A). But unlike the above-referenced cases, where the petitioners were challenging a subsequent detention after having previously been detained, placed in removal proceedings, then released on parole, there is no evidence that Petitioner in the instant case had been detained or placed in removal proceedings prior to July 2026. Rather, Petitioner was permitted to live and work lawfully in the U.S. for up to two years. See Parole Implementation, 87 Fed. Reg. at 63508. After expiration of that period, "those who are not granted asylum or other immigration benefits will need to leave the United States at the expiration of their authorized period of parole or will generally be placed in removal proceedings." Id. In that respect, the instant case is similar to cases in which this Court and others in this circuit have found that noncitizens who originally entered the U.S. lawfully possess a protected liberty interest, even after falling out of status. See, e.g., Kalkan v. Chestnut, No. 1:26-

cv-02028-DAD-EFB, 2026 WL 788112 (E.D. Cal. Mar. 20, 2026), *appeal dismissed*, No. 26-3277, 2026 WL 2446315 (9th Cir. 2026) (finding vested liberty interest where the petitioner had lived in the United States for nearly three years and the government was aware of his presence by virtue of his asylum case but did not promptly detain him); Carrasquel v. Warden, Cal. City Immigration Processing Ctr., No. 1:26-cv-06867-DAD-JDP, 2026 WL 2621102 (E.D. Cal. Sept. 4, 2026) (same where the petitioner lived in the United States for twelve years, had been granted temporary protected status after his visa expired, and was not promptly detained after the expiration of either his visa or temporary protected status); Medvezhov v. Warden, Golden State Annex Det. Facility, No. 1:26-cv-05918-KES-SAB, 2026 WL 2234501, at *2 (E.D. Cal. Aug. 3, 2026) (same where the petitioner lived freely in the United States for approximately four years and the government "deci[ded] *not* to detain [him], and instead to grant him work authorization while his asylum claim proceeded") (emphasis in original). Here, the record does not indicate when, or even if, Petitioner's parole expired.[2] It does, however, indicate that DHS authorized Petitioner's entry into the U.S. for the purpose of seeking asylum (Parole Implementation, 57 Fed. Reg. at 63508), that Petitioner applied for asylum within the one-year deadline to do so (ECF No. 7-1 at 2), and that the asylum application is still pending. Id. In other words, Petitioner abided by the processes that were available to him. Accordingly, the undersigned finds that Petitioner has a protected liberty interest and may invoke the Due Process Clause to seek relief in his individualized circumstances.

### B. Procedures Required – Mathews Factors

In deciding what process is due to immigration detainees, the Ninth Circuit has assumed, without deciding, that the three-part test articulated in Mathews v. Eldridge, 424 U.S. 319 (1976), applies. See Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206-07 (9th Cir. 2022). Under Mathews, the Court considers three factors: (1) the private interest affected; (2) the risk of an erroneous deprivation of that interest; and (3) the government's interest involved, including any

[2] Though the undersigned takes judicial notice of the Parole Implementation document which states that parole will be issued for up to two years (Parole Implementation, 57 Fed. Reg. at 63508), the record before the Court does not establish the relevant dates of Petitioner's parole.

fiscal or administrative burden that additional procedures would include. Mathews, 424 U.S. at 335.

i. Private Interest

Turning to the first factor in Mathews, Petitioner has a strong liberty interest in maintaining his out-of-custody status. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." Zadvydas v. Davis, 533 U.S. 678, 690 (2001). Petitioner lived freely within the United States for over two years. During that time, he applied for asylum, as contemplated by the parole program. See ECF 7-1 at 2; Parole Implementation, 57 Fed. Reg. at 63508. He also obtained a work permit and a driver's license. ECF No. 8 at 12-13. Petitioner's pursuit of lawful status during his two years living freely in the U.S. supports his private liberty interest. See Salazar v. Casey, 2025 WL 3063629, at *4 ("Petitioner has an interest in…attending hearings to seek a visa."); Noori v. Larose, 2025 WL 2800149, at *10 ("Petitioner has a private interest in remaining free, which developed over the year he resided in the United States.").

ii. Risk of Erroneous Deprivation

The second Mathews factor is "the risk of an erroneous deprivation of [Petitioner's] interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards." Mathews, 424 U.S. at 335. This factor favors Petitioner, as his re-detention required a pre-deprivation hearing in which the burden of proof lies with the government.

"Civil immigration detention, which is 'nonpunitive in purpose and effect[,]' is justified when a noncitizen presents a risk of flight or danger to the community." Omer G. G. v. Kaiser, 815 F. Supp. 3d at 1106 (quoting Zadvydas v. Davis, 533 U.S. 678, 690 (2001). Petitioner's grant of humanitarian parole necessarily required a finding that he was not a danger to the community. See Parole Implementation, 87 Fed. Reg. at 63516 (noncitizens "determined to pose a national security or public safety threat or otherwise do not warrant parole pursuant to section 212(d)(5)(A) of the INA, 8 U.S.C. § 1182(d)(5)(A), and as a matter of discretion upon inspection, will be processed under an appropriate processing pathway and may be referred to U.S.

Immigration and Customs Enforcement (ICE) for detention."). Courts in this circuit have found that the risk of erroneous deprivation is high when the noncitizen has not received a bond or custody hearing to determine whether there is any valid basis for detention after a prior determination that the noncitizen poses no danger or risk of flight. Kaur v. United States Dep't of Homeland Sec., 813 F. Supp. 3d 1167, 1176–77 (E.D. Cal. 2025); Pinchi v. Noem, 792 F. Supp. 3d 1025, 1035 (N.D. Cal. 2025) (quoting Singh v. Andrews, No. 1:25-cv-00801, 2025 WL 1918679, at *7 (E.D. Cal. July 11, 2025)).

Respondent did not allege any changed circumstances that would justify detention after its prior decision to allow Petitioner to live freely in the U.S..[3] Respondent's stated position is that Petitioner is detained pursuant to 8 U.S.C. § 1225(b)(2)(A). Even if Respondent concedes that § 1226(a) is the proper detention authority, they have not explained the basis for placing Petitioner in removal proceedings, nor why they determined that detention, rather than release on bond, was warranted. See 8 C.F.R. § 236.1(c)(8). Respondent charges Petitioner as removable under 8 U.S.C. § 1182(a)(7)(A)(i)(I) for being an applicant for admission not in possession of valid entry documents but provides no explanation for why the government made that determination in July 2026 (ECF No. 7-1 at 2; 7-2) but not in June 2024 when Petitioner initially entered the U.S. via humanitarian parole.[4] Respondent has not provided any justification for detaining Petitioner after its prior decision to grant humanitarian parole.

Even if changed circumstances existed, a neutral adjudicator should have first determined whether such changed circumstances would *now* render Petitioner a danger or risk of flight. See Diouf v. Napolitano, 634 F.3d 1081, 1092 (9th Cir. 2011) ("[T]he risk of an erroneous deprivation of liberty in the absence of a hearing before a neutral decisionmaker is

---

[3] Though Respondent submitted criminal background documents showing Petitioner's 2026 arrest (ECF No. 7-3) and the I-213 states that ICE encountered Petitioner after a criminal arrest (ECF No. 7-1 at 2) Respondent has not represented to this Court that ICE detained Petitioner due to the arrests.

[4] Factual allegation #4 in the Notice to Appear states that Petitioner has not adjusted to Lawful Permanent Resident (ECF No. 7-2 at 4), but that allegation, even if true, does not establish removability. See Parole Implementation, 57 Fed. Reg. at 63508 ("Those who are not granted asylum or other immigration benefits will need to leave the U.S,. at the expiration of their authorized period of parole or will generally be placed in removal proceedings after the period of parole expires."). The record contains no proof that Petitioner's parole has indeed expired, nor that asylum has been denied.

substantial.")(abrogated on other grounds). Respondent implies that any infringement on Petitioner's liberty interests can be adequately addressed in a post-deprivation bond hearing as permitted under 8 U.S.C. § 1226(a). ECF No. 7. However, a post-deprivation § 1226(a) hearing would place the burden on *Petitioner* to demonstrate that he does not pose a danger or flight risk. See Matter of R-A-V-P-, 27 I&N Dec. 803, 804 (BIA 2020) (citing Matter of Fatahi, 26 I&N Dec. 791, 795 n.3 (BIA 2016)); Matter of Guerra, 24 I&N Dec. 37, 40 (BIA 2006)). Moreover, Respondent has not provided any timeline for when such hearing might take place. Petitioner has already been detained for over two months without justification, and without being offered the opportunity to request a bond hearing. ECF No. 8 at 3. Relying on an as-yet-unscheduled post-deprivation hearing where the Petitioner must justify release – rather than where Respondent must justify deprivation of acquired liberty interest – would risk further erroneous deprivation.

iii. Government Interest

Under this factor, the Court weighs the government's interest, "including the function involved and the fiscal and administrative burdens that the additional or substitute requirement would entail." Mathews, 424 U.S. at 335. "[T]he government has a strong interest in effecting removal, and in protecting the public from danger." Maksim v. Annex, No. 1:25-cv-00955-SKO (HC), 2025 WL 2879328, at *5 (E.D. Cal. Oct. 9, 2025) (citations omitted). Here, though, Respondent does not argue that Petitioner is a flight risk or danger to the community. They have not articulated any legitimate interest that would support arresting Petitioner without a pre-deprivation hearing in which the government would have the opportunity to present evidence that Petitioner poses a danger or risk of flight. The effort and cost required to provide Petitioner with procedural safeguards before re-detention would have been minimal. See D. L.C. v. Wofford, No. 1:25-cv-01996-DC-JDP (HC), 2026 WL 25511, at *5 (E.D. Cal. Jan. 5, 2026) ("Custody hearings in immigration court are routine and impose a 'minimal' cost on the government." (quoting Doe v. Becerra, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. 2025)). Indeed, "it is likely that the cost to the government of detaining [Petitioner] pending any bond hearing would significantly exceed the cost of providing [him] with a pre-detention hearing." Pinchi v. Noem, 792 F. Supp. 3d at 1036.

The three Mathews factors weigh in Petitioner's favor and outweigh the government's interest in detention without first demonstrating that the detention was necessary to protect the community or ensure Petitioner's appearance. The undersigned therefore concludes that a pre-deprivation hearing was required to satisfy due process. The absence of such pre-deprivation hearing violates Petitioner's due process rights.

**C. Remedy**

"[T]he purpose of habeas remedies is to put the [petitioner] back in the position he would have been in if the constitutional violation never occurred." Lujan v. Garcia, 734 F.3d 917, 935 (9th Cir. 2013) (cleaned up). See also United States v. Stein, 541 F.3d 130, 146 (2d Cir. 2008) (recognizing that the "[t]he appropriate remedy for a constitutional violation is one that as much as possible restores" a litigant "to the circumstances that would have existed had there been no constitutional error") (cleaned up). Accordingly, a person who has suffered a constitutional violation should ordinarily be returned "to the status quo, or 'the last uncontested status which preceded the pending controversy.' " V.K. v. Noem, No. 5:26-CV-00241-MWC-SK, 2026 WL 246023, at *5 (C.D. Cal. Jan. 25, 2026) (quoting Hoac v. Becerra, No. 2:25-CV-01740-DC-JDP, 2025 WL 1993771, at *7 (E.D. Cal. July 16, 2026)); Chowdhury v. Lyons, No. 5:26-cv-01252-MEMF-E, 2026 WL 1045562, at *7 (C.D. Cal. Apr. 13, 2026) ("prompt release is the remedy that will best return Petitioner to the status quo and restore his position as it was prior to the detention that Petitioner contends was in violation of his constitutional and statutory protections"). This principle has particular force where, as here, the protections at issue are intended to prevent an unlawful detention in the first place. See United States v. Morrison, 449 U.S. 361, 364 (1981) (observing "the general rule that remedies should be tailored to the injury suffered"). Because Petitioner's detention violated his due process rights, the appropriate remedy is immediate release.

**IV. Recommendation**

Accordingly, IT IS HEREBY RECOMMENDED that:

1. Petitioner's application for a writ of habeas corpus be GRANTED.
2. Respondent be ORDERED to immediately RELEASE Petitioner Daniel Jose de la

Trinidad Abreu Bravo (A 234-272-705) from custody.

a. At the time of release, Respondent shall be required to return all of Petitioner's documents and possessions.

b. Respondent shall not impose any additional restrictions on Petitioner unless such restrictions are deemed necessary at a future pre-deprivation hearing.

3. Respondent be ENJOINED AND RESTRAINED from re-detaining Petitioner absent compliance with constitutional protections which include, at a minimum:

a. Pre-deprivation notice describing the change of circumstance(s) necessitating re-detention; and

b. A timely pre-deprivation hearing at which the government shall bear the burden of establishing, by clear and convincing evidence, that Petitioner poses a danger to the community or a risk of flight even after consideration of alternatives to detention, and at which Petitioner shall be permitted to have his counsel present.

4. The order not address the circumstances under which the government may detain Petitioner in the event Petitioner becomes subject to an executable final order of removal and Petitioner receives notice of that final order of removal.

5. The Clerk of the Court be directed to serve Central Valley Annex with a copy of any release order.

6. The Clerk of the Court be directed to enter judgment in favor of Petitioner and close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within **seven days** after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. The undersigned finds that a shortened objection period is warranted in this case given the nature of the relief at issue as well as the fact that the parties have had sufficient time to submit all of their arguments in written briefs. See United States v. Barney, 568 F.2d 134, 136 (9th Cir. 1978) (per curiam) (stating that 28 U.S.C. § 636(b)(1) sets

the maximum objection period and not the minimum); see also Local Rule 304(b). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: October 23, 2026

CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

3 abre1755.imm.fnr